IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PATRICIA BEIL,<br><br>    Plaintiff/Counterdefendant,<br><br>v.<br><br>AMCO INSURANCE COMPANY,<br><br>    Defendant/Counterplaintiff,<br><br>and<br><br>ILLINOIS MUNICIPAL LEAGUE RISK MANAGEMENT ASSOCIATION and RAYMOND MUNIZ,<br><br>    Defendants. | Case No. 16-cv-356-JPG-RJD |
| AMCO INSURANCE COMPANY,<br><br>    Crossclaim Plaintiff,<br><br>v.<br><br>RAYMOND MUNIZ,<br><br>    Crossclaim Defendant. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the cross-motions for summary judgment filed by plaintiff Patricia Beil (Doc. 40) and defendant AMCO Insurance Company ("AMCO") (Doc. 41). AMCO and defendant/crossclaim defendant Raymond Muniz have responded to Beil's motion (Docs. 45 & 47), and Beil has responded to AMCO's motion (Doc. 43). AMCO has replied to Beil's response (Doc. 49).

**I.    History of Case**

Beil originally filed this case in the Circuit Court of the Twentieth Judicial Circuit, St. Clair

County, Illinois. In the Complaint, Beil sought a declaration that AMCO, which had issued her a homeowner's insurance policy, had an obligation to defend and indemnify her in connection with a state court lawsuit brought by Raymond Muniz, *Muniz v. Beil*, Case No. 15-L-606, in St. Clair County. In that underlying lawsuit, Muniz alleges that Beil, a Trustee for the Village of St. Jacob, Illinois ("Village"), injured him by making false and defamatory statements about financial improprieties during Muniz's tenure as Mayor of the Village (Doc. 1-4 at 27-32). AMCO removed this case to federal court under 28 U.S.C. § 1441(a), which has original diversity jurisdiction over the controversy under 28 U.S.C. § 1332(a).[1] AMCO then filed a counterclaim/crossclaim seeking a declaration that it owes Beil no duty to defend or indemnify her in connection with the *Muniz* lawsuit.

In the pending summary judgment motions, Beil asks for summary judgment only on her claim regarding the duty to defend; AMCO asks for summary judgment regarding its duty to defend *and* indemnify.

## II. Legal Standards

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).

## III. Facts

### A. *Muniz* Lawsuits

The parties agree about the underlying lawsuit Muniz filed against Beil. In that lawsuit, Muniz alleged that he was the Mayor of the Village from May 2001 to May 2013 and that Beil was

---

[1] Once in federal court, Beil amended her complaint to add a new count against a new defendant, but that claim has been dismissed and is no longer in issue.

a Trustee of the Village from May 2011 through the time the lawsuit was filed. *Muniz* Compl. ¶¶ 3-4 (Doc. 11-1 at 1). Muniz alleges that Beil told a Belleville News-Democrat ("BND") reporter that Muniz had conducted financial improprieties as Mayor and called for him to be criminally investigated. *Muniz* Compl. ¶ 11 (Doc. 11-1 at 3). Her statements, which Muniz alleges were false and defamatory, were the basis for an October 24, 2014, BND article. *Muniz* Compl. ¶ 5 (Doc. 11-1 at 2, 3). The article recounts that Beil stated she relied on a July 25, 2014, forensic audit report ("Report") provided to the Village by an outside accounting firm. *Muniz* Compl. ¶ 7 (Doc. 11-1 at 2). The Report was prepared solely for use by the Village and stated that it should not be used by anyone other than the Village. *Muniz* Compl. ¶ 7 (Doc. 11-1 at 2). The Report was incomplete and misleading in that it named only Muniz and not others potentially responsible for certain questionable expenses, and it relied on unsubstantiated remarks from an anonymous Village resident. *Muniz* Compl. ¶ 7 (Doc. 11-1 at 2). It did not suggest any criminal activity or actionable wrongdoing by any party. *Muniz* Compl. ¶ 8 (Doc. 11-1 at 2). As a Trustee, Beil knew or should have known that the activities noted as questionable in the Report had actually been approved, some of them in votes conducted while Beil was present. *Muniz* Compl. ¶ 10 (Doc. 11-1 at 2-3). Beil stated she wanted to have information from the Report published in the newspaper before turning the Report over to the Madison County State's Attorney. *Muniz* Compl. ¶ 12 (Doc. 11-1 at 3). As a result of Beil's statements, on October 28, 2014, the BND published a cartoon depicting Muniz in prison garb reaching into a cookie jar labeled "St. Jacob." *Muniz* Compl. ¶ 13 (Doc. 11-1 at 3).

The following facts are undisputed, although Muniz did not plead them in his underlying complaint. Beil received compensation for her role as Village Trustee. By law, the powers of a

municipal Trustee are purely legislative. *See* 65 ILCS 5/3.1-45-15; 65 ILCS 5/6-4-6.

The Board of Trustees decided not to take any action in response to the Report. However, Beil wanted to have information about the Report published in the paper so her constituents would know about it before she approached the State's Attorney with the information. On October 22, 2014, Beil sent an email to the BND from her home using her personal computer and personal email account. The email stated, in pertinent part:

> Dear Editors,
>
> My name is Mrs. Pattie Beil. I serve as a St. Jacob Village Trustee. I hope you'll publish this Press Release calling for a public investigation by State's Attorney Tom Gibbons into what may be specific financial improprieties of former St. Jacob Mayor Mr. Raymond Muniz. I base my request for a public investigation upon an Independent Forensic Audit conducted by Auditors from Kenneth E. Loy and Company for the Village of St. Jacob.
>
> Thank you for your consideration in this matter.
>
> Sincerely,
> Mrs. Pattie Beil
> St. Jacob Village Trustee

(Doc. 47-1 at 118).

Attached to the email was a "press release" entitled "ST. JACOB TRUSTEE CALLS FOR INVESTIGATION OF FORMER MAYOR, RAYMOND MUNIZ," which began, "St. Jacob Village Trustee, Pattie Beil, today called on State's Attorney Tom Gibbons to investigate former St. Jacob Mayor Raymond Muniz for financial improprieties while Muniz was Mayor of St. Jacob," and which concluded, "For further information contact: Mrs. Pattie Beil," followed by Beil's telephone number (Doc. 47-1 at 117). A BND reporter then called Beil on her home telephone, and Beil returned the call and talked to the reporter from her home telephone. Beil did not give the Report a copy of the Report but directed her to the Village Hall to obtain a copy. Beil

4

received no compensation specifically for her communications with the BND.

Muniz sued Beil for defamation for knowingly and maliciously making false statements about Beil to a third party that harmed Muniz (Count I), for intentional infliction of emotional distress by her defamation (Count II) and for invading Muniz's privacy by placing him before the public in a false light in a way that would be offensive to a reasonable person (Count III).

B.     Insurance Policy

All parties agree that AMCO issued Beil a homeowner's insurance policy (Policy No. HA 0012437637-2) ("the Policy") that covered the time period of the events described in the *Muniz* lawsuit. Coverage E of the policy provides personal liability coverage. The Policy contains exclusions that AMCO believes apply to negate any coverage for the *Muniz* dispute:

> "Personal injury" coverage does not apply to:
> * * *
> d.     injury arising out of the "business" pursuits of an "insured";
> e.     civic or public activities performed for pay by an "insured".

AMCO Policy, § II – Exclusions at 19-24 (Doc. 1-4 at 4-9), as amended by Premier Homeowners Endorsement at 3-4 (Doc. 1-3 at 33-34). The Policy defines "business" as:

> a.     A trade. profession or occupation engaged in on a full-time, part-time or occasional basis; or
> b.     Any other activity engaged in for money or other compensation, except the following;
> 1)     Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity. . . .

AMCO Policy, Definitions at 1 (Doc. 1-3 at 35). AMCO also points to another exclusion for expected or intended injury.

Beil tendered her defense of the *Muniz* suit to AMCO, but AMCO declined the tender. AMCO argues that it does not have a duty to defend Beil because Counts I (defamation) and III

5

(false light) are excluded by the "business pursuits exclusion" and the "civic or public activities performed for pay exclusion." It further believes Count II (intentional infliction of emotional distress) does not fall within the Policy coverage or is excluded from coverage under the "expected or intended injury exclusion." AMCO concludes that since it has no duty to defend, it cannot owe Beil the narrower duty to indemnify.

On the other side, Beil argues her communications with the BND did not constitute a "business pursuit" or a "civic or public activity" and, on the contrary, were undertaken in her personal capacity outside her role as Trustee, which is a purely legislative role. She believes her conduct falls squarely under the Policy's coverage and is not excluded.

## IV. Analysis

### A. Duty To Defend

All parties agree that Illinois substantive law applies to this case. Under Illinois law, an insurer has an obligation to defend its insured in an underlying lawsuit if the complaint in the underlying lawsuit alleges facts potentially within the coverage of the insurance policy, even if the allegations end up being groundless, false or fraudulent. *General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). To determine if the underlying suit alleges a situation potentially within the insurance coverage, the Court compares the complaint to the relevant provisions of the insurance policy. *Id.* This is sometimes called the "eight-corners rule" because the Court compares the "the four corners of the underlying complaint with the four corners of the policy, according both the complaint and the policy a liberal construction." *Madison Mut. Ins. Co. v. Diamond State Ins. Co.*, 851 F.3d 749, 2017 WL 106555, at *3 (7th Cir. 2017). The Court's focus is on what is *actually* alleged rather than what *could* have

been alleged. *Id.* However, under certain unusual or compelling circumstances, the Court may look beyond the underlying complaint, as long as it does not determine an issue critical to the underlying lawsuit. *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1019, 1022 (Ill. 2010) (considering allegations in underlying counterclaim that, if true, would show that exception to coverage exclusion applies); *Title Indus. Assur. Co., R.R.G. v. First Am. Title Ins. Co.*, No. 15-3310, 2017 WL 1314934, at *4 (7th Cir. April 10, 2017) (allowing consideration of evidence beyond the underlying pleading when the insurer files a timely declaratory judgment action).[2] If any theory of recovery in the underlying lawsuit falls within the insurance coverage, the insurer will have a duty to defend. *Midwest Sporting Goods Co.*, 828 N.E.2d at 1098.

Under Illinois law, interpreting an insurance policy, even an ambiguous policy, is a matter of law. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993); *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998). In interpreting a policy, the Court must attempt to effectuate the parties' intention as expressed by the policy. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006). The Court should "construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs.*, 860 N.E.2d 280, 286 (Ill. 2006). If the policy is unambiguous, the Court must construe it according to the plain and ordinary meaning of its terms. *Valley Forge*, 860 N.E.2d at 314. On the other hand, if the policy is ambiguous, the Court must construe all ambiguities in favor of the insured and against the insurer, who drafted the policy. *Id.* In making the

---

[2] "[T]here is no reason why the trial court could not consider relevant, objective, undisputed facts in deciding the duty to defend, even if those facts fall outside the pleadings of the underlying lawsuit." *Bartkowiak v. Underwriters at Lloyd's, London*, 39 N.E.3d 176, 181 (Ill. App. Ct. 2015), *app. denied*, 48 N.E.3d 671 (Ill. 2016).

comparison, the Court must give the policy and the complaint a liberal construction favor of the insured. *Id.* Generally, the insured bears the burden of proving the claim is covered under a policy's grant of coverage, and the insurer bears the burden of proving an exclusion applies. *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009).

The Court now turns to the question of whether the underlying *Muniz* complaint alleges a situation potentially covered by the Policy. The Court believes it is appropriate in this case to also consider the undisputed circumstances of Beil's service as a Trustee and the details of her communications with the BND because she relies on those facts to support her theory that she was acting in her personal capacity outside her role as a Trustee during those communications. The Court may consider those facts because they do not tend to determine an issue crucial to the underlying lawsuit.

AMCO argues that Count II, for intentional infliction of emotional distress, does not fit within the Policy's coverage or, in the alternative, falls within an exclusion from coverage. Beil has not responded to those arguments. Pursuant to Local Rule 7.1(c), the Court construes her failure to respond as an admission of the merits of AMCO's argument that Count II does not state a claim potentially covered by the Policy and therefore cannot serve as the basis for finding a duty to defend. The Court therefore turns to Count I (defamation) and Count III (false light) to see if they state claims potentially covered by the Policy.

   1. <u>Business Pursuits Exclusion</u>

AMCO argues that the defense against Muniz's claims for defamation and false light are excluded from coverage by the business pursuits exclusion. Beil claims that, although her overall service as a Trustee might be a business pursuit, her conduct at issue in the *Muniz* suit did not arise

8

out of that business pursuit but instead out of personal activity on personal time with personal resources outside her Trustee role.

The business pursuits exclusion, as noted earlier, provides that the Policy's personal injury coverage does not apply to "injury arising out of the 'business' pursuits of an 'insured.'" AMCO Policy, § II – Exclusions at 19-24 (Doc. 1-4 at 4-9), as amended by Premier Homeowners Endorsement at 3-4 (Doc. 1-3 at 33-34). The Policy defines "business" to include "[a] trade, profession or occupation engaged in on a full-time, part-time or occasional basis." AMCO Policy, Definitions at 1 (Doc. 1-3 at 35). Caselaw also establishes that "[a] business pursuit is a continuous or regular activity, done for the purpose of returning a profit." *Badger Mut. Ins. Co. v. Ostry*, 636 N.E.2d 956, 959 (Ill. App. Ct. 1994).

It is clear that Beil's overall service as a Trustee was a business pursuit, and she does not really dispute this conclusion. The job of paid municipal Trustee qualifies as a "business" under the Policy because it is an "occupation engaged in on a[n] . . . occasional basis." AMCO Policy, Definitions at 1 (Doc. 1-3 at 35). It requires oversight of certain Village functions; preparing for, attending and participating in Village Board of Trustees meetings; and making decisions regarding the governance of the Village for the health and wellbeing of its citizens. It further satisfies the interpretation of business pursuits given by caselaw. Serving as a municipal Trustee is a continuous or regular activity in that it requires performing legislative tasks, attending meetings, and performing other functions incidental to representing the interests of the citizens of the Village over a Trustee's term. The pay that Beil received satisfied the profit requirement. Indeed, municipal officers who serve for pay have been found to be engaging in an "occupation" that constituted a business pursuit for the purposes of the business pursuits exclusion. *See, e.g.,*

9

*Metropolitan Prop. & Cas. Ins. Co. v. Stranczek*, 968 N.E.2d 717, 723 (Ill. App. Ct. 2012) (insured engaged as mayor for pay was engaging in "occupation" subject to the business pursuits exception).[3]

The critical question then becomes whether the conduct described in the *Muniz* lawsuit "arose out of" Beil's business pursuit. The conduct, specifically, is Beil's communications that allegedly defamed Muniz and portrayed him in a false light. Beil claims her conduct did not "arise out of" her occupation as a Trustee because it was non-legislative conduct she conducted on her own time using her own personal resources. She notes she was not required to engage in communications with the media as part of her Trustee duties. AMCO claims Beil's conduct did arise out of her occupation as a Trustee because Beil publicized information she received as a Trustee only for use by Trustees, she referred to her role as a Trustee in her email and press release, and she was motivated by the desire to inform her constituents about municipal concerns.

The Court begins with the phrase "arising out of." The phrase is extremely broad, although the Court should give it the most limited interpretation possible in favor of the insured when it appears in an exclusion. *Maryland Cas. Co. v. Chicago & N. W. Transp. Co.*, 466 N.E.2d 1091, 1094 (Ill. App. Ct. 1984). "'Arising out of' has been held to mean 'originating from,' 'having its origin in,' 'growing out of' and 'flowing from.'" *Id.* (quoting *Western Cas. & Sur. Co. v. Branon*, 463 F. Supp. 1208, 1210 (E.D. Ill. 1979)). It has also been held to mean "'[t]o spring up, originate, to come into being or notice' or 'to come into being,' 'to come about: come up: take place.'" *Allstate Ins. Co. v. Smiley*, 659 N.E.2d 1345, 1351 (Ill. App. Ct. 1995) (internal citations

---

[3] Beil's service as a Trustee also falls within the second prong of the definition of "business": "Any other activity engaged in for money or other compensation, except . . . [v]olunteer activities for which no money is received other than payment for expenses incurred to perform the activity. . . ." AMCO Policy, Definitions at 1 (Doc. 1-3 at 35). As noted above, Beil received money for her service as Trustee, so she was not a volunteer even if she did not get paid specifically for communicating with her constituents.

omitted).

There is no doubt that Beil's conduct alleged by Muniz in the underlying complaint arose out of her occupation as a Trustee, even giving the phrase "arising out of" its most narrow interpretation. The audit was conducted and the Report was prepared at the behest of the Board of Trustees while Beil was a Trustee. The auditor presented the Report to the Trustees solely for the Village's official use, and it was in her capacity as Trustee that Beil received a copy of the Report. Although it was available to the public because it was presented at a public meeting, the Report existed because the Village Trustees commissioned it, and it was created solely for the Village's use.

More importantly, in Beil's communications with the BND, she spoke as a Trustee. In her email, she immediately identified herself as a Trustee and closed by signing off as a Trustee. This was clearly an effort to wield the authority of Trusteehood to lend credibility to the content of her press release. As for the press release itself, she described her call *as a Trustee* to the State's Attorney to investigate Muniz, again invoking the authority and gravitas of her office. And as a basis for her statements, she cited the Report that had been prepared *solely for use by the Village.*

Furthermore, Beil contacted and spoke with the BND in an effort to communicate with her constituents about official business, a crucial function of a legislative representative. She wanted them to know about possible municipal wrongdoing on which the Board of Trustees was not going to act. The fact that Beil communicated from her home using her home computer and email account does not negate the fact that, in all her communications, she spoke as a Trustee – invoking her title as a Trustee several times – about the Report prepared solely for the use of Village, and for the purpose of informing her constituents about Village business. Under no interpretation of the

phrase "arising out of" could Beil's activity not have arisen out of her occupation as Trustee.

Beil argues that her communications with the BND did not constitute a business pursuit because she was not paid for those communications. Her focus exclusively on her communications is too narrow. Such a narrow focus ignores the fact that while her *powers* as a Trustee were purely legislative, her *role* as a Trustee was much broader.[4] Her communications with the BND occurred in her performance of that broader Trustee role of representing and communicating with Village citizens about administration of the Village. While such activities may not be covered by legislative privilege or immunity because they are not technically within the scope of legislative powers, *Hutchinson v. Proxmire*, 443 U.S. 111, 133 (1979) (considering Speech and Debate Clause of United States Constitution); *Meyer v. McKeown*, 641 N.E.2d 1212, 1215 (Ill. App. Ct. 1994), they are an important part, albeit a political part, of an elected representative's job, *see United States v. Brewster*, 408 U.S. 501, 512 (1972) ("It is well known, of course, that Members of the Congress engage in many activities other than the purely legislative activities protected by the Speech or Debate Clause. These include . . . preparing . . . news releases. . . . Although these are entirely legitimate activities, they are political in nature rather than legislative. . . ."); *Mirshak v. Joyce*, 652 F. Supp. 359, 365 (N.D. Ill. 1987). Beil was, in fact, being compensated for her communication because communication with her constituents was a legitimate part of her job as Trustee, even if she was not compensated for the specific act of communicating or compelled to make such communications.

Beil cites the unpublished decision in *Country Mutual Insurance Company v. Molburg*, No. 3-12-0364, 2013 WL 1760594 (Ill. App. Ct. 2013), in support of her argument that her conduct

---

[4] In fact, Beil describes in her deposition duties of Trustees beyond strictly legislative functions such as, for example, oversight of the police department, working with the police chief, and researching grant opportunities for the Village. Beil Dep. 84:19-85:2 (Doc. 40-1 at 84-85).

did not arise out of a business pursuit. In *Molburg*, the insured sought coverage from her personal umbrella insurance policy for an underlying defamation lawsuit based on statements she made about her employer during and following her employment. *Id.* at *1. Those statements were "motivated by her personal insecurity, a desire to keep her employment, and vindictiveness" rather than financial gain. *Id.* at *4. Her insurance policy included a business pursuits exception. *Id.* at *3. The Illinois Court of Appeals held that the statements did not arise out of a business pursuit because at least some of the insured's statements were motivated by personal reasons rather than money and were not related to her employment. *Id.* at *4. The *Molburg* case is distinguishable from the case at bar. Here, Beil's statements were motivated by her desire to inform her constituents about the administration of the Village, a purpose clearly central to her occupation as a Trustee, and were done in furtherance of her service as a Trustee, for which she was compensated. *Molburg* is simply not persuasive to this Court.

For these reasons, the Court finds the business pursuits exclusion of the Policy excludes coverage for liability from Counts I and III of Muniz's underlying lawsuit, and AMCO therefore has no duty to defend Beil in that suit.

        2.      <u>Civic or Public Activities Performed for Pay Exclusion</u>

AMCO argues that the defense against Muniz's claims for defamation and false light are also excluded from coverage by the civic or public activities performed for pay exclusion. Again, Beil argues that her conduct was not civic or public activity performed for pay but rather unremunerated personal conduct on personal time with personal resources outside her Trustee role.

As noted earlier, the civic or public activities performed for pay exclusion provides that the

13

Policy's personal injury coverage does not apply to "civic or public activities performed for pay by an 'insured'." AMCO Policy, § II – Exclusions at 19-24 (Doc. 1-4 at 4-9), as amended by Premier Homeowners Endorsement at 3-4 (Doc. 1-3 at 33-34). The Policy does not define "civic or public," but courts may look to dictionary definitions to determine the plain and ordinary meaning of terms not defined in a contract. The Oxford English Dictionary defines "civic" to include "[o]f, belonging to, or relating to a city, town, borough, or other community of citizens; *esp.* of or relating to the administration and affairs of such a community; municipal." *Civic, Oxford English Dictionary Online* (Mar. 2017), http://www.oed.com/view/Entry/ 33569?redirectedFrom=civic (visited Apr. 11, 2017); *see also DeBoer v. Village of Oak Park*, 53 F. Supp. 2d 982, 991 (N.D. Ill.) (citing *Webster's II New Riverside Univ. Dictionary* 266 (1984) (defining "civic" as "of, relating to, or belonging to a city, a citizen, or citizenship")), *rev'd in part on other grounds*, 86 F. Supp. 2d 804 (N.D. Ill. 1999), *aff'd in part & rev'd in part on other grounds*, 267 F.3d 558 (7th Cir. 2001). "Public" has a number of definitions in different contexts and usages, but the one that makes the most sense when paired with "civic" is "[o]f or relating to the people as a whole; that belongs to, affects, or concerns the community or the nation." *Public, Oxford English Dictionary Online* (Mar. 2017), http://www.oed.com/view/ Entry/154052?rskey=cHMj01&result=1&isAdvanced=false (visited Apr. 11, 2017); *see also City of Champaign v. Madigan*, 992 N.E.2d 629, 637 (Ill. App. Ct. 2013) (citing *Merriam-Webster's Collegiate Dictionary* 941 (10th ed. 2000) (defining "public" to include "of or relating to business or community interests as opposed to private affairs")).

Beil's service as a Trustee is certainly a civic or public activity in that it relates to the administration and affairs of the Village and relates to, affects or concerns the community of the

Village.  Beil also served as a Trustee for pay.  Thus, her Trustee service qualifies as a civic or public activity performed for pay under the Policy.

As discussed above, her conduct alleged in Muniz's underlying lawsuit not only arose out of her service as a Trustee, it *was* civic or public activity because it was communication with her constituents about Village business.  Thus, the civic or public activities performed for pay exclusion of the Policy also excludes coverage for liability from Counts I and III of Muniz's underlying lawsuit.  This is an alternative reason AMCO has no duty to defend Beil in that suit.

In sum, both the business pursuits exclusion and the civic or public activities performed for pay exclusion remove Beil's conduct alleged in Counts I and III of Muniz's underlying lawsuit from the Policy's coverage.  Beil having already conceded that Count II does not state a claim potentially within the Policy's coverage, the Court finds that Muniz has not stated a claim against Beil in the underlying lawsuit potentially falling within the Policy's coverage.  Therefore, AMCO has no duty to defend Beil in that lawsuit and is entitled to summary judgment on that issue.

2. <u>Duty to Indemnify</u>

The duty to defend is broader than the duty to indemnify.  *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.,* 607 N.E.2d 1204, 1220 (Ill. 1992).  Therefore, where the Court concludes there is no duty to defend, there is necessarily no duty to indemnify.  *National Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010).  Because the Court has found AMCO has no duty to defend Beil in the *Muniz* lawsuit, it has no duty to indemnify her either, and it is entitled to summary judgment with respect to the duty to indemnify as well.

V.  **Conclusion**

For the foregoing reasons, the Court:

- **DENIES** Beil's motion for summary judgment on the question of the duty to defend (Doc. 40);

- **GRANTS** AMCO's motion for summary judgment on the question of the duty to defend and the duty to indemnify (Doc. 41);

- **DECLARES** as follows:

    AMCO Insurance Company has no duty to defend or indemnify Patricia Beil under Homeowners Policy No. HA 0012437637-2, effective January 9, 2014, to January 8, 2015, with respect to any of the conduct alleged in the Complaint in *Muniz* v. *Beil*, Case No. 15-L-606, in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   April 19, 2017**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
